# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**BRIAN THOMPSON**                                   **CIVIL ACTION**

**VERSUS**

**GERALD LANE, ET AL.**                              **NO.: 12-00526-BAJ-SCR**

## RULING AND ORDER

Before the Court is **Defendants' Motion for Summary Judgment (Doc. 65)**, filed by Defendants Gerry Lane Enterprises, Inc. and Eric Lane[1] (collectively "Defendants"), seeking an order from this Court granting summary judgment, pursuant to Federal Rule of Civil Procedure 56, and dismissing Plaintiff Brian Thompson's ("Thompson") claims. Thompson opposes the motion. (Doc. 67.) Defendants filed a reply memorandum. (Doc. 77.) Oral argument is not necessary. Jurisdiction is proper, pursuant to 28 U.S.C. § 1331. For the reasons stated herein, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Defendant Eric Lane is named as a Defendant in his capacity as the Representative of the Succession of Gerald R. Lane. (Doc. 47.)

# I.     Background

## A.     Thompson's Complaint[2]

Thompson filed this employment discrimination lawsuit pursuant to Title VII of the Civil rights Act of 1964, 42 U.S.C. § 2000, *et seq.* ("Title VII"), and the Louisiana Employment Discrimination Law, La. R.S. § 23:301, *et seq.*[3]  Thompson, an African American male, alleges that Defendants discriminated against him on the basis of his national origin, race, and sex and constructively discharged him from his sales associate position at Gerry Lane Chevrolet in Baton Rouge, Louisiana.  Specifically, Thompson alleges that dealership owner, Gerald R. Lane ("Lane"), created a hostile work environment in which Thompson was subjected to discriminatory comments, name-calling, abusive language, intimidation, and unwelcome physical contact.  According to Thompson, Defendants also retaliated against him in response to his complaints of unlawful discrimination.  Thompson's Complaint also alleges that Defendants actions amounted to intentional infliction of emotional distress.  Thompson further alleges claims for assault and battery, pursuant to La. R.S. § 14:36 and La. Civ. Code art. 2315, and a claim for unpaid wages under La. Rev. Stat. § 23:631, *et seq.*

---

[2] Thompson originally filed this lawsuit along with ten other current and former employees of Gerry Lane Enterprises, Inc.  (Doc. 1.)  Subsequently, the Court issued an order requiring the Clerk of Court to sever the claims into eleven separate lawsuits, and requiring each plaintiff to file an amended complaint.  (Doc. 4.)  Accordingly, Thompson filed his amended Complaint on September 11, 2012.  (Doc. 6.)

[3] A previous ruling by this Court indicated that Thompson also asserted a claim under 42 U.S.C. § 1981.  (Doc. 95, p. 1.)  However, a review of Thompson's Complaint reveals that he seeks punitive damages under 42 U.S.C. § 1981(a) *only*, and did not allege a claim under 42 U.S.C. § 1981.  Under the terms of the Civil Rights Act of 1991, punitive damages awards are available in claims under Title VII. 42 U.S.C. § 1981(a)(b)(1).  It is well established, however, that Title VII and 42 U.S.C. § 1981 are two separate and distinct causes of action.  *Green v. Shannon Med. Ctr.*, No. 6:04-CV-066-C, 2006 U.S. Dist. LEXIS 4967, at *8 (N.D. Tx. Feb. 9, 2006).

**B.     Undisputed Facts**[4]

- Defendant Gerry Lane Enterprises operates as Gerry Lane Chevrolet, an automobile dealership in Baton Rouge.

- Prior to his May 2013 death, Lane owned a majority interest in Gerry Lane Enterprises.

- Lane also owned a majority interest in three other new car dealerships in Baton Rouge: Gerry Lane Cadillac, Gerry Lane Buick GMC and Gerry Lane Imports. Lane's son, Eric Lane and Cedric Patton (African American) now own minority interests in those dealerships.

- Sales managers Ken Balthrop (African-American), Chad Bell (Caucasian), Cecil Overstreet (African-American), and JK Khamiss (Middle-Eastern) reported to sales manager, Reynold Ankeny (Caucasian) and directly supervised the sales force.

- The sales force typically comprises anywhere between twenty and thirty individuals.

- During the 2011-2012 time-frame, approximately seventy to eighty percent of the sales force was African-American.

- Thompson initially worked for Gerry Lane Buick GMC.

- During his initial term of employment, Thompson experienced no discrimination or harassment.

- Thompson began his second stint working for a Gerry Lane dealership - this time for Gerry Lane Chevrolet - as a salesperson in May 2011.

- Like all employees, Thompson received an initial orientation at the time of his hire.

- As part of this process, Thompson received various policies governing the terms of his employment.
- On April 20, 2012, Thompson's counsel sent a letter to the Company and Lane indicating that Thompson intended to pursue legal claims for harassment and discrimination.

---

[4] In accordance with Rule 56.1 of the Local Rules of the United States District Court for the Middle District of Louisiana, Defendants submitted a statement of undisputed material facts. (Doc. 64-2); L.R. 56.1. In opposition, Thompson submitted a response to Defendants' statement of undisputed material facts. (Doc. 67-2); Fed.R.Civ.P. 56(c); L.R. 56.2. Accordingly, only certain material facts are deemed admitted for purposes of this ruling and order. L.R. 56.2.

- Subsequently, Terry Bell (the individual handling human resources for Gerry Lane Enterprises) issued a written memorandum in which he instructed Thompson to report any retaliation to him.

- Gerry Lane Chevrolet was a high-pressure sales environment.

- Gerry Lane enforced a grooming policy for all employees who interacted with customers.

- Lane did not want employees congregating.

- Because Lane did not permit employees at the dealership to congregate together during work hours, he would approach and break up employees, and tell them that they "could not sell a car to each other."

- Lane provided Cedric Patton with an ownership interest in is business operations and put him in charge of the Chevrolet and Buick GMC dealerships.

- Lane never called Thompson a "nigger."

- Lane never told Thompson to leave his premises.

- Plaintiff cannot establish that Gerry Lane Enterprises failed to pay him any wages or other sums due at termination in violation of Louisiana law.

- Lane did not brandish a gun on June 21, 2012.

## C. Defendants' Motion for Summary Judgment

As to the instant motion, Defendants seek an order from this Court dismissing Thompson's claims. Defendants contend that Thompson is precluded from asserting federal or state law discrimination claims against individual supervisors. Defendants further argue that Thompson cannot point to sufficient evidence to establish his discrimination claims on the basis of his sex, national origin, or race. Defendants also contend that Thompson cannot point to sufficient evidence to establish his retaliation, constructive discharge, intentional infliction of emotional distress, or assault and battery,

or unpaid wages claims. Accordingly, Defendants argue that summary judgment is warranted.

Thompson concedes that relief under Title VII or the Louisiana Employment Discrimination Law is only available against an employer, and not against an individual supervisor or fellow employee. Thompson further concedes that he cannot point to sufficient evidence to establish his unpaid wages claims. He argues, however, that there are genuine disputes of material fact that preclude summary judgment in favor of Defendants. Specifically, Thompson contends that there are genuine disputes of material fact related to his race and sex discrimination claims, as well as his retaliation, constructive discharge, intentional infliction of emotional distress, and assault and battery claims. Accordingly, Thompson contends that Defendants' motion must be denied. Thompson does not make any specific arguments related to his national origin discrimination claim.

## II.    Standard of Review

Pursuant to Federal Rule of Civil Procedure ("Rule") 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323; *Liquid Air Corp.*, 37 F.3d at 1075.

In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997). The court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the court must deny the motion for summary judgment. *International Shortstop, Inc.*, 939 F.2d at 1263.

## III.    Analysis

As an initial matter, as noted above, Thompson concedes that relief under Title VII or the Louisiana Employment Discrimination Law is only available against an employer, and not against an individual supervisor or fellow employee. *Umoren v. Plano Indep. Sch. Dist.*, 457 F. Appx. 422, 425 (5th Cir. 2012); *Mitchell v. Tracer Construction Co., et al.*, 256 F. Supp. 2d 520, 525 (M.D. La. 2003); *see also* La. R.S. 23:303(A).   Thompson also concedes that he cannot point to sufficient evidence to establish his unpaid wages claim. Accordingly, Defendants' request that the Court dismiss Thompson's federal and state law discrimination claims against Lane, or any other individual supervisor or fellow employee, as well as his unpaid wages claim is **GRANTED**.

### A.    Thompson's Hostile Work Environment Claim on the Basis of His Sex[5]

"[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986).   Such a violation occurs when the plaintiff establishes (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on sex; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer

---

[5] Employment discrimination claims under Title VII and the Louisiana Employment Discrimination Law are analyzed under the same standard. *Turner v. Kan. City Southern Ry. Co.*, 675 F.3d 887, 891 (5th Cir. 2012) (the Louisiana Employment Discrimination Law requires the same elements of proof as a Title VII hostile work environment claim); *Knapper v. Hibernia Nat'l Bank*, 49 So. 3d 898, 902 n.11 (La. Ct. App. 2010) ("Claims under the [Louisiana Employment Discrimination Law] are subject to the same analysis as discrimination claims under federal Title VII of the Civil Rights Act of 1964."). Accordingly, Thompson's claims under Title VII and the Louisiana Employment Discrimination Law shall be jointly addressed and analyzed.

knew or should have known of the harassment in question and failed to take prompt remedial action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012); *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). Here, Defendants contend that Thompson cannot establish that the harassment complained of affected a term, condition, or privilege of his employment.

In order for harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Meritor Sav. Bank*, 477 U.S. at 67). For harassment to be sufficiently severe or pervasive to alter the conditions of employment, the conduct complained of must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Aryain v. Wal-Mart Stores of Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008); *see also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993). Thus, not only must the victim perceive the environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile or abusive. *Harris*, 510 U.S. at 21-22. To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating; (4) whether it interferes with an employee's work performance. *Id.* at 23.

In opposition to the motion, Thompson contends that he was subjected to sexual harassment by Lane *and* Garafola. A review of Thompson's Complaint reveals his

allegation that Lane "personally places his hands on employees and invades their personal space and personally slapped Plaintiff Thompson on the buttocks on the showroom floor in front of customers and employees." (Doc. 6, p. 5.) Noticeably absent from his Complaint, however, are any allegations related to Garafola's actions.

In his Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination, Thompson alleged that Garafola "subjects me and some of the other men to regular homosexual advances, innuendo and jokes that create an extremely uncomfortable work environment." (Doc. 6-1, p. 2.) However, as noted in the Court's previous Ruling and Order (Doc. 95), Thompson failed to identify Garafolo in his Complaint. (Doc. 6.) Further, Thompson failed to allege any facts that would support a claim for sexual harassment, based on Garafola's actions. (Doc. 6.) Indeed, the only sexual harassment allegations contained in his Complaint are based on alleged actions of Lane. (Doc. 6, p. 5.) Thompson failed to cite, nor has the Court identified, any binding case law that would permit the Court to consider factual allegations that are *not* contained in his Complaint, and thus, not before the Court. Accordingly, the Court shall limit its analysis to Thompson's sexual harassment claim on the basis of Lane's actions.

In opposition to the motion, Thompson contends that Lane inappropriately touched him on his buttocks, which made him feel "violated." In support of this contention, Thompson points to his deposition, in which he testified that Lane "slapped [him] on the butt" and that he "felt violated." (Doc. 67-3, pp. 3-6.) It is unclear from the evidence submitted by Thompson exactly when or how often Lane touched his buttocks. Thompson failed to point to any other evidence in support of his sexual harassment claim.

Simply put, Thompson has failed to point to sufficient evidence from which a jury could conclude that the harassment complained of was severe or pervasive enough to affect a term, condition, or privilege of his employment. Even viewing the facts in the light most favorable to Thompson, Lane's act simply does not approach the level of severe and pervasive conduct that would "destroy [Thompson's] opportunity to succeed in the workplace." *Shepard v. Comptroller of Public Accounts of State of Tx.*, 168 F.3d 871, 874-75 (5th Cir. 1999) (evidence that a co-worker had made several sexually suggestive comments, often tried to look down the plaintiff's clothing, touched and rubbed the plaintiff's arm, and twice invited her to sit on his lap during office meetings was not sufficiently severe to be actionable under Title VII). Indeed, when compared to cases in which courts in this Circuit have denied summary judgment or afforded relief, Lane's actions were simply not frequent or serious enough to alter the conditions of Thompson's employment. *Compare Hockman v. Westward Communs., LLC*, 407 F.3d 317, 328-29 (5th Cir. 2004) (finding that the defendant's actions of making one remark to the plaintiff about another employee's body, slapping the plaintiff on her behind with a newspaper, grabbing or brushing against the plaintiff's breast or behind, attempting to kiss the plaintiff on one occasion, and standing in the door of the women's bathroom while the plaintiff was washing her hands did not qualify as a hostile work environment), *with Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 524 (5th Cir. 2001) (finding that repeated sexual advances in the face of adamant refusals by the plaintiff were sufficiently extreme to qualify as a hostile work environment). Accordingly, Defendants'

request that the Court dismiss Thompson's claim that he was subjected to a hostile work environment claim on the basis of his sex is **GRANTED**.

### B.    Thompson's Hostile Work Environment Claim on the Basis of His Race

A plaintiff may establish a Title VII violation based on race discrimination creating a hostile work environment. *Ramsey*, 286 F.3d at 268. "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish a prima facie case, the plaintiff must prove that: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[6] *Ramsey*, 286 F.3d at 268. Here, Defendants argue that Thompson cannot point to sufficient evidence to establish that the harassment complained of was based on race, or that it affected a term, condition or privilege of his employment.

In opposition, Thompson argues that Lane subjected him to unwelcome harassment on the basis of his race that was severe and pervasive. In support of this contention, Thompson points to his deposition, in which he testified that Lane referred to him as a "runaway slave" (Doc. 67-3, p. 2; Doc. 67-3, p. 17); compared him to a "blind monkey" (Doc. 67-3, p. 17); subjected him to unwanted "face checks" to ensure he was clean shaven on

---

[6] Where the harassment is allegedly committed by a supervisor with immediate authority over the harassed employee, the plaintiff need only satisfy the first four elements of the *prima facie* case. *Celestine*, 266 F.3d at 353.

two occasions, even though he did not have facial hair (Doc. 67-3, pp. 26-28); referred to him and approximately four other African American employees as "ghetto" and asked them, "[w]here in the hell do ya'll think ya'll at? The damn ghetto? If I wanted to see the ghetto, I'd go look over my back fence." (Doc. 67-3, pp. 20-22, 42); and exclaimed, "Am I being racist? You damn right I am. I've earned the right to be." to the same group (Doc. 67-3, p. 22); questioned African American employees during a sales meeting about "Black Friday" by exclaiming, "Ya'll black people think that's the day that ya'll have money to go shopping. You think that's ya'll's day." I bet y'all think Black Friday [is] for ya'll, for black people," and then turned to Thompson and said, "I bet you do a lot of shopping on Black Friday." (Doc. 67-3, p. 35); and referred to an African American finance manager's Native American heritage as being from the "nigga-ho tribe" in a sales meeting (Doc. 67-3, p. 24; Doc. 65-6, p. 26). Thompson also points to the deposition testimony of a white co-worker who testified that in his three weeks with the Company, he heard Lane use the word "ghetto" while "breaking up employees" "at least three times" (Doc. 67-4, p. 3); of an African American co-worker who testified that Lane justified his accusation that the co-worker was being untruthful because the co-worker is the "same color as Obama" (Doc. 67-5, p. 18); and of an African American co-worker who testified that Lane only checked African American employees faces to ensure they were clean shaven (Doc. 67-5, p. 10).

Viewing the facts in the light most favorable to Thompson, the Court finds that he has presented sufficient evidence to establish a genuine dispute of material fact from which a jury could conclude that the harassment complained of was based on race. Such a conclusion is underscored by the deposition testimony of Thompson's white co-worker,

who testified that he "never heard [Lane] talk to the white salespeople like the black salespeople. Definitely. He never said the same things to us that he would say to the others." (Doc. 67-10, p. 3.)

Viewing the facts in the light most favorable to Thompson, the Court also finds that he has presented sufficient evidence to establish a dispute of material fact from which a jury could conclude that the harassment was severe and pervasive. Indeed, the evidence presented by Thompson suggests more than just a handful of racially-charged comments. Rather, the evidence presented supports the conclusion that Lane subjected Thompson to race-based insults, ridicule, and intimidation on a regular basis. *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 163 (5th Cir. 2007) ("Frequent incidents of harassment, though not severe, can reach the level of 'pervasive,' thereby altering the terms, conditions, or privileges of employment such that a hostile work environment exists.").

Further, where, as here, the plaintiff has presented evidence of a pattern of race-based harassment, it is appropriate for the Court to consider incidents of non-race-based harassment. *Compare WC&M Enters, Inc.*, 496 F.3d at 400 (determining that a fact finder could reasonably conclude that a co-worker's frequent banging on the glass partition of the plaintiff's office was motivated by animus related to the plaintiff's national origin because the same co-worker had repeatedly called the plaintiff "Arab" for approximately one year), *with Hernandez*, 670 F.3d at 654 (declining to consider incidents of harassment not based on race where there was no evidence that the conduct was part of a pattern of race-based harassment). The Court finds that when evidence of Lane's race-based harassment of Thompson is taken together with evidence of the non-race-

based harassment, it is reasonable to conclude that the harassment complained of was severe or pervasive enough to affect a term, condition, or privilege of Thompson's employment. Accordingly, Defendants' request that the Court dismiss Thompson's hostile work environment claim on the basis of his race is **DENIED**.

C.   **Thompson's Hostile Work Environment Claim on the Basis of His National Origin**

A plaintiff may establish a Title VII violation based on national origin discrimination creating a hostile work environment. To establish a prima facie case, the plaintiff must prove that: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on national origin; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[7]  *Ramsey*, 286 F.3d at 268 (citations omitted). Here, Defendants contend that Thompson failed to allege a separate and distinct national origin discrimination claim. Thompson failed to present any argument or evidence in opposition to Defendants' argument.

National origin, though often confused with race, refers to "the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86, 88 (1973). Accordingly, the EEOC Guidelines on Discrimination Because of National Origin define national origin discrimination "broadly as including, but not limited to, the denial of equal employment

---

[7] As mentioned above, where the harassment is allegedly committed by a supervisor with immediate authority over the harassed employee, the plaintiff need only satisfy the first four elements of the *prima facie* case. *Celestine*, 266 F.3d at 353.

opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group." 29 C.F.R. § 1606.1.

Nothing in the record suggests that Thompson's national origin is *not* American. Indeed, Thompson failed to present any evidence regarding his or his ancestor's place of origin.

Accordingly, the Court finds that Thompson's national origin discrimination claim is not a separate and distinct claim. As such, an analysis of Thompson's national origin claim would merely duplicate the Court's analysis of his race claim. *See Bullard v. OMI Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir. 1981) (in some contexts, national origin and racial discrimination are "so closely related . . . as to be indistinguishable.") When viewing the facts, it is clear that Thompson is alleging race discrimination, and that his claim of discrimination on the basis of national origin is superfluous. Accordingly, Defendants' request that the Court dismiss Thompson's claim that he was subjected to a hostile work environment claim on the basis of his national origin is **GRANTED**.

### D.    Thompson's Retaliation Claim

Title VII contains an anti-retaliation provision that "prohibits an employer from discriminating against an employee or job applicant because that individual opposed any practice made unlawful by Title VII." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (internal quotations, citation, and alterations omitted); 42 U.S.C. § 2000e-3(a). A plaintiff establishes a *prima facie* case of retaliation by showing: (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) there

was a causal link between the protected activity and the adverse employment action. *Hernandez*, 670 F.3d at 657 (citing *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008)). Here, Defendants argue that Thompson cannot point to sufficient evidence to meet these elements.

In opposition, Thompson points to his deposition, in which he testified that Lane "constantly [brought] up" his lawsuit against the Company during sales meetings and would "badger us in the meeting in front of everybody." (Doc. 67-3, p. 34.) Specifically, Thompson testified that Lane "badgered" Thompson and the other African American employees who filed suit by exclaiming:

> A:    For those of ya'll in this lawsuit trying to get money from insurance from me, I'm worth 35 million motherfucking dollars, and before you see a penny of my money, you'll be an old ass man. He would say - he said to us - he said to us, it was after the lawsuit was filed, that he was back healthy and he was going to be a mean motherfucker, especially to some of us. And that's when he also referred to me as the ringleader and called me a bitch after the lawsuit was filed.

(Doc. 67-3, p. 34.) Thompson also testified that "there were times that Mr. Lane would just stand on the balcony and just stand there and stare at us. I mean, just beam to the point to where you were uncomfortable."(Doc. 67-3, p. 46); that Lane asked him and the other African American employees who filed suit "why don't ya'll just quit . . . why are ya'll still here?" (Doc. 67-3, p. 48); that the working environment "made it almost impossible" to sell cars (Doc. 67-3, p. 48); and that he "was kind of fearful of being there" (Doc. 67-3, p. 48).

Even viewing the facts in the light most favorable to Thompson, the Court finds that he has not pointed to sufficient evidence to create a dispute of material fact as to the second prong of a *prima facie* case of retaliation. *King v. Louisiana*, 294 F. Appx. 77, 85 (5th Cir. 2008) (holding that "allegations of unpleasant work meetings, verbal reprimands, improper work requests and unfair treatment do not constitute adverse employment actions as . . . retaliation")*; Grice v. FMC Techs., Inc.*, 216 F. Appx. 401, 407 (5th Cir. 2007) (holding that unjustified reprimands are considered "trivial" and not materially adverse in the retaliation context); *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. Appx. 437, 442 (5th Cir. 2007) (holding that a written disciplinary warning for insubordination and being argumentative would not have "dissuaded a reasonable worker from making or supporting a charge of discrimination")*; Gallentine v. Hous. Auth.*, 919 F. Supp. 2d 787, 807 (E.D. Tex. 2013) (holding that a write-up, which was classified as a verbal warning, cannot satisfy the second prong of a *prima facie* case of retaliation). Indeed, Thompson has failed to cite to any binding case law that would require the Court to conclude otherwise. Accordingly, Defendants' request that the Court dismiss Thompson's retaliation claim is **GRANTED**.

### E.     Thompson's Constructive Discharge Claim

"Constructive discharge occurs when an employee has quit [his] job under circumstances that are treated as an involuntary termination of employment." *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). To succeed on his constructive discharge claim, Thompson must show "working conditions . . . so intolerable that a reasonable person in the employee's position would have felt compelled to resign."

*Hypolite v. City of Houston*, 493 Fed. Appx. 597, 607-608 (5th Cir. 2012) (quoting *Nassar v. Univ. of Tex. Sw. Med. Ctr.*, 674 F.3d 448, 453 (5th Cir. 2012)). There must be "a greater severity of pervasiveness or harassment than the minimum required to prove a hostile work environment." *Id.* (quoting *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 444 (5th Cir. 2011)). Therefore, courts in the Fifth Circuit consider aggravating factors including: (1) demotion; (2) reduction in salary; (3) reduction in job responsibility; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Id.* (citing *Nassar*, 674 F.3d at 453). Here, Defendants argue that Thompson cannot point to sufficient evidence to establish these factors.

In opposition, Thompson argues that he felt compelled to resign after a verbal alteration with Lane. In support of this argument, Thompson points to his deposition, during which he testified about the verbal altercation between he, three African American co-workers, and Lane on June 21, 2012. (Doc. 67-3, p. 30.) According to Thompson, Lane "approached [Thompson] and invaded [his] personal space and put his hand in [Thompson's] face and called [him] the ringleader and called [him] a bitch." (Doc. 67-3, p. 30.) Thompson failed to point to evidence that Lane physically attacked or threatened to physically attack Thompson. Further also testified that he "knew [Lane] carried a gun." (Doc. 67-3, p. 30.) However, Thompson also failed to point to any evidence that

Lane displayed his gun on the day of the verbal altercation, or that Lane threatened to shoot Thompson.

As noted above, to survive summary judgment, Thompson must present evidence of working conditions even more egregious than those required to establish a hostile working environment. *Hypolite*, 493 Fed. Appx. at 607-608. During his deposition, Thompson confirmed that he was not terminated, his compensation was not reduced, he was not suspended or demoted, and his job duties were not changed. (Doc. 65-6, pp. 58-59.) Thus, the only factor Thompson can rely on to meet the reasonable employee test is "badgering harassment, or humiliation by the employer calculated to encourage the employee's resignation." *Id.*

While Lane's comments were unprofessional and boorish, such comments do not amount to conduct so intolerable that a reasonable employee would feel compelled to resign. Further, Thompson's subjective belief that he "had to leave or risk bodily harm," without more, is insufficient to meet the extremely high standard for a constructive discharge claim. *Compare Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 640 (7th Cir. 2009) (concluding that evidence that African-American plaintiff's co-workers repeatedly displayed a noose and threatened violence qualifies as "egregious for purposes of constructive discharge"), *and Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1190-91, 1199 (7th Cir. 1992) (concluding that considerable evidence supported the district court's finding of constructive discharge where the plaintiff's boss constantly made racist comments, brandished gun, took a photograph of himself holding gun to the plaintiff's head, and passed that photo around office), *with Stover v. Hattiesburg Pub. Sch. Dist.*, 549

F.3d 985, 991-92 (5th Cir. 2008) (employee failed to meet the reasonable employee test where she claimed that she was not compensated appropriately, not given career development opportunities, not allowed to accrue compensatory time, harassed and discriminated against, and "excluded from prestigious retreats"). Indeed, Thompson has failed to cite to any binding case law that would require the Court to conclude otherwise.

In sum, the Court concludes that Thompson has failed to present sufficient evidence to establish a dispute of material fact from which a jury could conclude that he was constructively discharged. Accordingly, Defendants' request that the Court dismiss Thompson's constructive discharge claim is **GRANTED**.

## F. Thompson's Assault and Battery Claims

In Louisiana, a battery is "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact . . ." *Landry v. Bellanger*, 851 So. 2d 943, 949 (La. 2003) (citing *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987)). According to the Louisiana Supreme Court, the defendant's intention need not be malicious nor need it be an intention to inflict actual damage. *Id.* (citing *Caudle*, 512 So. 2d at 391). It is sufficient if the defendant intends to inflict either a harmful or offensive contact without the other's consent. *Id.* (citing *Caudle*, 512 So. 2d at 391). In contrast, "assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La. R.S. § 14:36.

In support of the motion, Defendants argue that Thompson cannot point to sufficient evidence to establish his assault and battery claims. In opposition, Thompson contends that Lane intended to touch him on his face and buttocks, and that the touching

was unwanted. In support this contention, Thompson points to his deposition testimony, in which he testified that Lane touched his face twice and "slapped" him on his buttocks once, and that he "didn't like it". (Doc. 67-3, pp. 3, 4, 25-28; Doc. 65-6, p. 14.)

In support of the motion, Defendants argue that Thompson cannot point to sufficient evidence to establish that Lane intended to make a harmful or offensive contact. Thus, Defendants argue that Thompson's battery claim must be dismissed. However, the actor need not form the intention that his actions be harmful or offensive. *Molette v. City of Alexandria*, No. CV04-0501-A, 2005 U.S. Dist. LEXIS 44043, at *23 (W.D. La. Sept. 30, 2005) (citing Landry, 851 So.2d at 949). Rather, in the tort liability analysis, the element of intent is satisfied if the actor desires to "bring about a result which will invade the interests of another in a way that the law forbids. The actor may be liable although intending nothing more than a good-natured practical joke, or honestly believing that the act would not injure the plaintiff, or even though seeking the plaintiff's own good." *Caudle*, 512 So. 2d at 391.

Viewing the facts in the light most favorable to Thompson, the Court finds that he has pointed to sufficient evidence to establish a dispute of material fact from which a jury could conclude that a battery was committed. Accordingly, Defendants request that the Court dismiss Thompson's battery claim must be denied.

As it relates to his assault claim, Thompson must establish three elements: (1) "an intent to scare mental element"; (2) "conduct by defendant of the sort to arouse reasonable apprehension of bodily harm"; and (3) "the resulting apprehension on the part of the victim." *State v. Blaise*, 504 So.2d 1092 (La. App. 5th Cir. 1987). Here, Thompson

failed to address, let alone present any evidence to establish these elements.  As such, Defendants' request that the Court dismiss Thompson's assault claim must be granted.

Accordingly, Defendants' request that the Court dismiss Thompson's assault and battery claims is **GRANTED IN PART** and **DENIED IN PART**.

### G.    Thompson's Intentional Infliction of Emotional Distress Claim

In Louisiana, in order to recover for intentional infliction of emotional distress, a plaintiff must establish: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).  In support of the motion, Defendants argue that Thompson cannot point to sufficient evidence to establish these elements.

In opposition, Thompson failed to point the Court to specific evidence to support each prong of his intentional infliction of emotional distress claim.  Instead, Thompson generally argues that where there is a question as to whether there was pattern of harassment, summary judgment is inappropriate.  However, Thompson's bare assertion that there are genuine disputes of material fact, without more, is insufficient.  Even assuming, *arguendo*, that the evidence in the record establishes that Lane's conduct was extreme and outrageous, Thompson has failed to point the Court to any evidence whatsoever to establish that the emotional distress suffered by him rises to the level of severe distress required to support such a claim, or that Lane desired to inflict severe

22

emotional distress upon Thompson or knew that severe emotional distress would be certain or substantially certain to result from his conduct toward Thompson. Accordingly, the Court finds that Thompson has failed to present sufficient evidence to establish a dispute of material fact from which a jury could conclude that Lane is liable for intentional infliction of emotional distress. As such, Defendants' request that the Court dismiss Thompson's intentional infliction of emotional distress claim is **GRANTED**.

IV.    **Conclusion**

Accordingly,

**IT IS ORDERED** that **Defendants' Motion for Summary Judgment (Doc. 65)** is **GRANTED IN PART** and **DENIED IN PART**.

· Defendants' request that the Court dismiss Thompson's federal and state law discrimination claims against Lane, or any other individual supervisor or fellow employee, is **GRANTED**. Accordingly, Thompson's federal and state law discrimination claims against Lane, or any other individual supervisor or fellow employee, are **DISMISSED**.

· Defendants' request that the Court dismiss Thompson's claim under La. R.S. § 23:631 is **GRANTED**. Accordingly, Thompson's claim under La. R.S. § 23:631 is **DISMISSED**.

· Defendants' request that the Court dismiss Thompson's claim that he was subjected to a hostile work environment claim on the basis of his sex is **GRANTED**. Accordingly, Thompson's hostile work environment claim on the basis of his sex is **DISMISSED**.

- Defendants' request that the Court dismiss Thompson's hostile work environment claim on the basis of his race is **DENIED**.

- Defendants' request that the Court dismiss Thompson's hostile work environment claim on the basis of his national origin is **GRANTED**. Accordingly, Thompson's hostile work environment claim on the basis of his national origin is **DISMISSED**.

- Defendants' request that the Court dismiss Thompson's retaliation claim is **GRANTED**. Accordingly, Thompson's retaliation claim is **DISMISSED**.

- Defendants' request that the Court dismiss Thompson's constructive discharge claim is **GRANTED**. Accordingly, Thompson's constructive discharge claim is **DISMISSED**.

- Defendants' request that the Court dismiss Thompson's battery claim is **DENIED**.

- Defendants' request that the Court dismiss Thompson's assault claim is **GRANTED**. Accordingly, Thompson's assault claim is **DISMISSED**.

- Defendants' request that the Court dismiss Thompson's intentional infliction of emotional distress claim is **GRANTED**. Accordingly, Thompson's intentional infliction of emotional distress claim is **DISMISSED**.

Baton Rouge, Louisiana, this 29th day of September, 2014.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**